IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

RAYMOND RALEIGH HENDERSON,
    Plaintiff,

vs.                                                Case No.:  5:05cv59/SPM/EMT

STATE OF FLORIDA, et al.,
    Defendants.
_____/

**ORDER, REPORT AND RECOMMENDATION**

    This cause is before the court on Plaintiff's motion to proceed in forma pauperis (Doc. 5) and second amended civil rights complaint filed pursuant to 42 U.S.C. § 1983 (Doc. 15).

    Plaintiff names eleven Defendants in this action:  the State of Florida; City of Springfield Police Department ("Police Department"); Corrections Corporation of America ("CCA"); Stetsun's Nightclub; Sgt. Garner and Officer Colby Whitehead, Officers with the Police Department; Edward Eanes, Owner of Stetsun's Nightclub; "John Doe," a bouncer at the nightclub; Kevin Watson, Warden of the Bay County Jail operated by CCA; Chad Roberts, a correctional officer at the Jail; and Adrien Vela, the supervisor of the nursing staff at the Jail (Doc. 1 at 2).  Plaintiff claims Defendants violated his Fourth, Eighth, and Thirteenth Amendment rights by using excessive force, unlawfully seizing him, and depriving him of bathroom facilities and medical care.  Plaintiff seeks monetary damages.

    Because Plaintiff is proceeding in forma pauperis, the court may dismiss the case if satisfied that the action is "(i) frivolous or malicious;  (ii) fails to state a claim on which relief may be granted;  or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C.A. § 1915(e)(2)(B).  A complaint is frivolous under section 1915(d) "where it lacks an arguable basis either in law or in fact."  <u>Neitzke v. Williams</u>, 490 U.S. 319, 325, 109 S.Ct. 1827, 1833, 104 L.Ed.2d 338 (1989).  Dismissals on this ground should only be ordered when the legal theories are "indisputably meritless," *Id.* at 327, 109 S.Ct. at 1833, or when the claims rely on factual

allegations that are "clearly baseless." Denton v. Hernandez, 504 U.S. 25, 31, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992). Dismissals for failure to state a claim are governed by the same standard as Federal Rule of Civil Procedure 12(b)(6). Mitchell v. Farcass, 112 F.3d 1483, 1485 (11th Cir. 1997). The allegations of the complaint are taken as true and are construed in the light most favorable to Plaintiff. Davis v. Monroe County Bd. Of Educ., 120 F.3d 1390, 1393 (11th Cir. 1997). The complaint may be dismissed only if it appears beyond doubt that Plaintiff can prove no set of facts that would entitle him to relief. Brown v. Budget Rent-A-Car Systems, Inc., 119 F.3d 922, 923 (11th Cir. 1997). Upon review of the complaint, the court concludes that dismissal of Plaintiff's claims is warranted.

Plaintiff alleges the following facts in support of his claims. At approximately 12:47 a.m. on December 27, 2003, while Plaintiff was inside Stetsun's, Plaintiff intervened in an altercation between his mother and her boyfriend (Doc. 15 at 13). The altercation moved to the parking lot of the nightclub (id.). Plaintiff re-entered Stetsun's and requested the assistance of an unidentified bouncer to keep Plaintiff's mother and her boyfriend apart (id.). When Plaintiff exited Stetsun's, Defendant John Doe, an unidentified bouncer at the nightclub, jumped on Plaintiff and pinned him to the ground (id. at 9, 13). Plaintiff's leg was broken during the altercation (id. at 9). Officer Whitehead and Sgt. Garner responded to the scene, and Defendant Whitehead "piled on top of" Plaintiff in an effort to assist the bouncer as Plaintiff lay immobilized on the ground (id. at 13). Plaintiff's leg was further injured by Whitehead's actions (id. at 9, 13). Sgt. Garner observed these events (id. at 9). Defendant Whitehead then handcuffed Plaintiff and dragged him to the police car (id. at 9, 15). Officer Whitehead transported Plaintiff and Mr. Curtis Nolette, who was also involved in the incident, to the Jail (id. at 9, 15). Officer Whitehead told Plaintiff he was not under arrest, but was being taken into custody to protect Plaintiff and others until Plaintiff "detoxified" (id. at 9, 15). Officer Whitehead denied Plaintiff's requests for medical attention for his leg (id.).

Upon arrival at the Jail, Defendant Roberts, a guard at the Jail, placed Plaintiff in a cell with no bench, toilet, water, or phone (id. at 9-10). Roberts denied Plaintiff's requests for medical attention and access to a telephone (id.). Plaintiff was also denied use of bathroom facilities and, as a result, urinated on the floor of the cell (id. at 10). Defendant Roberts came into the holding cell, rolled Plaintiff into the urine, and stated, "This is what we do to people that piss in here" (id.). Hours later, Roberts required Plaintiff to mop the floor, even though Plaintiff could barely stand due

to his injured leg (*id.*). As Plaintiff was leaving the Jail, a nurse hired by Defendant Vela observed Plaintiff's leg, informed him that it was probably broken, and told Plaintiff to "get it taken care of" (*id.* at 10, 19). Upon his release, Plaintiff was denied transportation to a hospital, therefore he "hopped" to the hospital (*id.*). As a result of the incident, Plaintiff was emotionally traumatized and has undergone two surgeries, including implanting a metal plate in his leg and a filter to prevent blood clots, and suffered from a blood clot in his lung (*id.* at 10-11). Plaintiff continues to suffer extreme pain, and discoloration and limited use of his leg (*id.* at 11).

As relief, Plaintiff seeks monetary damages in the amount of $15,000,000.00 from the State of Florida, $5,000,000.00 from each of the municipality and corporate Defendants, and $2,500,000.00 from each of the individual Defendants (*id.* at 21).

Initially, Plaintiff's claim against the State of Florida for monetary damages must be dismissed. It is well established that the Eleventh Amendment is an absolute bar to suit for monetary damages by an individual against a state or its agencies, or against officers or employees of the state or its agencies in their official capacities. Edelman v. Jordan, 415 U.S. 651, 94 S.Ct. 1347 (1974). Absent waiver or express congressional abrogation, neither of which is present in this case, the Eleventh Amendment prohibits Plaintiff's suit against the State of Florida in federal court. Kentucky v. Graham, 473 U.S. 159, 167 n. 14, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985); Gamble v. Florida Department of Heath and Rehabilitative Services, 779 F.2d 1509, 1511 (11th Cir. 1986). Therefore, Plaintiff's claims against the State of Florida should be dismissed.

Additionally, Plaintiff has failed to state a viable claim for relief against Defendants Eanes, John Doe, and Stetsun's Nightclub. In any section 1983 action, the initial inquiry must focus on whether two essential elements are present:

    1. whether the conduct complained of was committed by a person acting under color of state law; and

    2. whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States.

Parratt v. Taylor, 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420, 428 (1981), *overruled on other grounds*, Daniels v. Williams, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); Duke v. Cleland, 5 F.3d 1399, 1403 (11th Cir. 1993) (citing Parratt).

In the instant case, Plaintiff alleges Edward Eanes is the owner of Stetsun's Nightclub, the employer of the unidentified bouncer who injured Plaintiff. "Only in rare circumstances can a

private party be viewed as a 'state actor' for section 1983 purposes." Harvey v. Harvey, 949 F.2d 1127, 1130 (11th Cir. 1992). Private parties may be viewed as state actors for section 1983 purposes if one of the following three tests is met: "(1) the State has coerced or at least significantly encouraged the action alleged to violate the Constitution ('State compulsion test'); (2) the private parties performed a public function that was traditionally the exclusive prerogative of the State ('public function test'); or (3) the State had so far insinuated itself into a position of interdependence with the [private parties] that it was a joint participant in the enterprise ('nexus/joint action test')." Rayburn ex rel. Rayburn v. Hogue, 214 F.3d 1341, 1347 (11th Cir. 2001) (citations and internal quotation marks omitted).

Plaintiff was previously advised that a private party does not normally act under color of state law and, therefore, is not subject to suit under section 1983 (*see* Doc. 11). *See* Dennis v. Sparks, 449 U.S. 24, 27-29, 101 S.Ct. 183, 186, 66 L.Ed.2d 185 (1980); Adickes v. S.H. Kress & Co., 398 U.S. 144, 152, 90 S.Ct. 1598, 1605, 26 L.Ed.2d 142 (1970). Plaintiff was additionally advised that to maintain this action against the private party Defendants, he must allege sufficient facts to show that they were acting under color of state law when the alleged constitutional violations occurred. Although Plaintiff alleges he believes Stetsun's had a "special arrangement" with the Police Department or certain members thereof to provide security for the nightclub, he provides no facts in support of his allegation, nor does he allege that the bouncer who jumped on him was employed as part of this "special arrangement." Therefore, his claims against Defendants John Doe, Edward Eanes, and Stetsun's Nightclub should be dismissed.

Plaintiff has also failed to state a Fourth Amendment claim against Defendant Whitehead regarding the lawfulness of the seizure and detention and the amount of force used in transporting him to the police car and placing him in it. Plaintiff alleges Defendant Whitehead used excessive force and unreasonably seized him in violation of his Fourth Amendment rights by "piling on" Plaintiff upon his arrival at the scene, dragging Plaintiff to the police car and placing him in it, and detaining him without probable cause (Doc. 15 at 15).

The Supreme Court has instructed that all claims of the use of excessive force by law enforcement officers in the course of arrests, investigatory stops, and seizures of people are properly analyzed under the Fourth Amendment and its reasonableness standard. *See* Jackson v. Sauls, 206

F.3d 1156, 1167 (11th Cir. 2000) (quoting Graham v. Connor, 490 U.S. 386, 394-95, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)); Crosby v. Paulk, 187 F.3d 1339, 1351 (11th Cir. 1999).

Personal encounters between law enforcement officers and citizens are "seizures" on occasions "when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen." Terry v. Ohio, 392 U.S. 1, 19 n. 16, 88 S.Ct. 1868, 1879 n. 16, 20 L.Ed.2d 889 (1968). "A law enforcement officer has probable cause to arrest a suspect if the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense. VonStein v. Brescher, 904 F.2d 572, 579 (11th Cir. 1990) (citing United States v. Jimenez, 780 F.2d 975 (11th Cir.1986) and United States v. Mastrangelo, 733 F.2d 793 (11th Cir. 1984)). The existence of probable cause to arrest is based on objective standards. United States v. Hastamorir, 881 F.2d 1551 (11th Cir.1989).

The court's inquiry in an excessive force case must focus on whether the officer's actions were "objectively reasonable" in light of the facts and circumstances confronting him; thus his conduct must be judged from "the perspective of a reasonable officer on the scene, rather than through the lens of hindsight [ ], taking into account all of the attendant circumstances." Kesinger v. Herrington, 381 F.3d 1243, 1248 (11th Cir. 2004) (citing Graham); Vinyard v. Wilson, 311 F.3d 1340, 1347 (11th Cir. 2002). In examining the officer's conduct, the court should look to the "totality of circumstances" to determine if the manner of arrest was reasonable. *See* Draper v. Reynolds, 369 F.3d 1270, 1277 (11th Cir. 2004) (citing Tennessee v. Garner, 471 U.S. 1, 8-9, 105 S.Ct. 1694, 1700, 85 L.Ed.2d 1 (1985)). To assess whether the force used was reasonable, "courts must examine (1) the need for the application of force, (2) the relationship between the need and amount of force used, and (3) the extent of the injury inflicted." *Id.* at 1277-78 (citations and footnote modified); *see also* Vinyard, 311 F.3d at 1347. The need for the application of force is assessed by whether the force used was reasonably proportionate to the need for that force, which is measured by considering the severity of the crime, whether the suspect posed an immediate danger to the officer or others, and whether the suspect was actively resisting arrest or attempting to evade arrest by flight. *See* Durruthy v. Pastor, 351 F.3d 1080, 1094 (11th Cir. 2003) (quoting Graham), as cited in Lee v. Ferraro, 284 F.3d 1188, 1197-98 (11th Cir. 2002)); *see also* Draper, 369

F.3d at 1277, n. 13 (citing Lee). It is also well-settled that the right to make an arrest "necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." Graham, 490 U.S. at 396, 109 S.Ct. 1865; Durruthy, 351 F.3d at 1094; Vinyard, 311 F.3d at 1347; Lee, 284 F.3d at 1197. Moreover, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments--in circumstances that are tense, uncertain, and rapidly evolving--about the amount of force that is necessary in a particular situation." Graham, 490 U.S. at 396-97, 109 S.Ct. 1865; *see also* Crosby v. Monroe County, 394 F.3d 1328, 1333 (11th Cir. 2004) (noting that courts must not "view the matter as judges from the comfort and safety of our chambers . . . [but rather] must see the situation through the eyes of the officer on the scene who is hampered by incomplete information and forced to make a split-second decision between action and inaction . . .").

In the instant case, there is no question that Officer Whitehead's detaining Plaintiff in a cell at the Jail for several hours constituted a "seizure" for Fourth Amendment purposes. The issue is whether probable cause existed for the detention, and whether the force used in effecting the seizure was reasonable. On the first point, Plaintiff admits that at the time Officer Whitehead responded to the scene of the altercation, Plaintiff had consumed alcohol and was being pinned to the ground by a bouncer from the nightclub (Doc. 15 at 13, 15). These facts, within Officer Whitehead's personal knowledge, would cause a prudent person to believe that Plaintiff had committed an affray in violation of Florida Statutes section 870.01; an assault in violation of section 784.011; a battery in violation of section 784.03; disorderly intoxication in violation of section 856.011 and/or disorderly conduct in violation of section 877.03. Thus Officer Whitehead's transporting Plaintiff to the Jail and detaining him for several hours was constitutionally permissible.

Plaintiff additionally challenges the amount of force used by Officer Whitehead upon his arrival at the scene, as well as the force used in placing Plaintiff in the police car. Given the totality of the circumstances as alleged by Plaintiff, Plaintiff has sufficiently alleged that the amount of force used in effecting the seizure of Plaintiff was unreasonable. Plaintiff alleges that when Whitehead arrived, Plaintiff was pinned to the ground by the bouncer, and Plaintiff was lying face down, immobilized, and helpless, with his leg at an odd angle, and offering no resistance (Doc. 15 at 13). Plaintiff alleges Officer Whitehead's jumping on him caused his leg to "snap," which resulted in so much pain that Plaintiff briefly lost consciousness (*id*. at 13-14). Plaintiff has sufficiently alleged

that he was not actively resisting arrest or attempting to flee, and he did not pose an immediate danger to Officer Whitehead or the others at the scene. Based upon these facts, Plaintiff has sufficiently stated a claim of excessive force in effecting the seizure of Plaintiff's person.

However, to the extent Plaintiff challenges Officer Whitehead's use of force in dragging Plaintiff to the police car and lifting his leg into the car, Plaintiff has failed to state a constitutional claim. Plaintiff admits he was immobilized and handcuffed. Given Plaintiff's condition, Officer Whitehead's options for getting Plaintiff into the police car were limited, and dragging Plaintiff facilitated his transportation while avoiding Plaintiff's having to put weight on the injured leg. Thus, it was not unreasonable for Officer Whitehead to drag Plaintiff to the police car and lift Plaintiff's leg into the car. Accordingly, Plaintiff's constitutional claims against Defendant Whitehead challenging the seizure and the force used to put him in the police car for transport to the Jail should be dismissed.[1] In sum, the only constitutional claim stated by Plaintiff with regard to his seizure, detention, and the amount of force used by Officer Whitehead, is the excessive force claim against Whitehead for jumping on Plaintiff upon his arrival at the scene.

Plaintiff next claims Defendant Garner is liable for the unreasonable seizure, excessive force, and failure to obtain medical care because he was at the scene and failed to intervene. An officer can be liable for failing to intervene when another officer uses excessive force. Priester v. City of Riviera Beach, Florida, 208 F.3d 919, 924 (11th Cir. 2000); *see also* Ensley v. Soper, 142 F.3d 1402, 1407-08 (11th Cir. 1998) ("[I]f a police officer, whether supervisory or not, fails or refuses to intervene when a constitutional violation such as an unprovoked beating takes place in his presence, the officer is directly liable[.]"). This liability, however, only arises when the officer observes the violation, is in a position to intervene, and fails to do so. Priester, 208 F.3d at 924.

In the instant case, although Plaintiff sufficiently stated an excessive force claim regarding Officer Whitehead's jumping on him upon the officers' arrival at the scene, the facts fail to show

---

[1]Plaintiff also alleges Officer Whitehead's unreasonable seizure and use of force violated "plaintiff's rights to the equal protection of the law" (Doc. 15 at 15). To the extent Plaintiff asserts an equal protection violation, he has failed to state a constitutional claim. To establish such a claim, Plaintiff must allege that similarly situated persons unreasonably or arbitrarily suffered different treatment by the state actor. *See* Nordlinger v. Hahn, 505 U.S. 1, 112 S.Ct. 2326, 2331, 120 L.Ed.2d 1 (1992); Hendking v. Smith, 781 F.2d 850 (11th Cir. 1986). Furthermore, Plaintiff must allege that Defendants acted with the intent to discriminate against him. *See* McClesky v. Kemp, 481 U.S. 279, 292, 107 S.Ct. 1756, 1767, 95 L.Ed.2d 262 (1987); E & T Realty v. Strickland, 830 F.2d 1107, 1113 (11th Cir. 1987). In the instant case, Plaintiff does not allege he was treated differently that similarly situated persons; indeed, he admits that another person involved in the incident was taken to the Jail with him. Therefore, he has failed to state an equal protection claim.

Defendant Garner was in a position to intervene. Plaintiff alleges Officer Whitehead and Sergeant Garner arrived at the scene, and "[w]ithout further ado" Whitehead piled on top of him (Doc. 15 at 13). In light of the alleged immediacy of Whitehead's conduct upon the officers' arrival, and the absence of facts suggesting Defendant Garner was previously aware that Whitehead intended to use such force upon their arrival, the facts do not suggest Garner was in a position to intervene in the initial interaction between Whitehead and Plaintiff. Furthermore, in light of the fact that Plaintiff failed to state a constitutional claim as to the reasonableness of the seizure and the force used in transporting him to the police car and placing him in it, as discussed *supra*, his claims against Defendant Garner for failing to intervene should be dismissed. Additionally, Plaintiff does not allege facts suggesting Defendant Garner knew that Plaintiff would be deprived of medical care for his leg, therefore, to the extent Plaintiff seeks to impose liability upon Garner for the alleged deprivation of medical care, this claim should be dismissed as well.

Plaintiff's claims against the Police Department should also be dismissed. "[A] municipality cannot be held liable under section 1983 on a respondeat superior theory" for the actions of municipal employees. *See* Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Municipal liability under section 1983 only exists when "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that [municipality's] officers." *Id.* at 690, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611; *see also* Quinn v. Monroe County, 330 F.3d 1320, 1325 (11th Cir.2003) (stating that "municipalities may be held liable for the execution of a governmental policy or custom"); Davis v. DeKalb County School Dist., 233 F.3d 1367, 1375 (11th Cir.2000) ("[R]ecovery from a municipality is limited to acts that are, properly speaking, acts 'of the municipality' that is, acts which the municipality has officially sanctioned or ordered.") (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 478, 106 S.Ct. 1292, 1298, 89 L.Ed.2d 452 (1986)).

In the instant case, Plaintiff fails to identify a policy statement, ordinance, regulation, or decision officially adopted and promulgated by the City or Police Department which sanctioned or ordered police officers to engage in conduct which resulted in unreasonable seizures, the use of excessive force, or deprivations of medical care. Therefore, Plaintiff's claims against the City and Police Department should be dismissed.

Additionally, Plaintiff's allegations as to Warden Watson, Adrein Vela, and CCA are insufficient to support a basis for liability. Plaintiff apparently seeks to hold them liable on a respondeat superior theory of liability. It is well established that supervisory officials are not liable under section 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability. *See* Cottone v. Jenne, 362 F.3d 1352, 1360 (11th Cir. 2003) (internal quotation marks and citations omitted). Supervisory liability may occur, however, either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation. *Id.* (citation omitted). This connection may be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so, or when a supervisor's custom or policy 'result[s] in deliberate indifference to constitutional rights' or when facts support 'an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.'" *Id.* (internal quotation marks and citations omitted); Wayne v. Jarvis, 197 F.3d 1098, 1105 (11th Cir. 1999), *cert. denied*, 120 S.Ct. 1974, 146 L.Ed.2d 804 (2000).

Isolated incidents are generally insufficient to establish a supervisor's liability, and filing a grievance with a supervisory person does not alone make the supervisor liable for the allegedly violative conduct brought to light by the grievance, even if the grievance is denied. Wayne, 197 F.3d at 1106; Weaver v. Toombs, 756 F. Supp. 335, 337 (W.D. Mich. 1989), *aff'd*, 915 F.2d 1574 (6th Cir. 1990); *see also* Bellamy v. Bradley, 729 F.2d 416, 421 (6th Cir. 1984). Knowledge imputed to the supervisor "must be so pervasive that the refusal to prevent harm rises to the level of a custom or policy of depriving inmates of their constitutional rights." Tittle v. Jefferson County Com'n, 10 F.3d 1535, 1542 (11th Cir. 1994). The failure to act or implement policy must be in the face of repeated violations or other indicators signifying a strong likelihood that the situation will recur. *See* Harris v. City of Marion, 79 F.3d 56, 58-59 (7th Cir. 1996). Supervisors are generally entitled to rely on their subordinates to respond appropriately to situations absent clear or widespread evidence to the contrary. "The standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous." Cottone, 362 F.3d at 1360 (internal quotation marks and citation omitted).

Case No: 5:05cv59/SPM/EMT

In the instant case, Plaintiff does not allege Defendant Vela, the supervisor of the nursing department at the Jail, personally participated in the alleged deprivation of medical treatment for Plaintiff's broken leg, or that Vela directed subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so. Nor does Plaintiff allege facts showing the existence of a history of widespread abuse that put Defendant Vela on notice of the need to correct the alleged deprivation, and Vela failed to do so. Furthermore, although Plaintiff alleges that Defendant Vela assisted in establishing the policies and customs concerning the duties of the nursing staff at CCA, and the policies and customs caused him to experience physical and emotional harm (*see* Doc. 15 at 19), his allegations are conclusory. He fails to identify a policy or custom that resulted in the denial of medical treatment. Therefore, his claims against Defendant Vela should be dismissed.

Likewise, Plaintiff has failed to state a basis for liability against Warden Watson or CCA. Plaintiff does not allege Warden Watson participated in the alleged unconstitutional conduct of Defendant Roberts, or that Warden Watson directed Roberts to act unlawfully or knew that he would act unlawfully and failed to stop him from doing so. Nor does Plaintiff allege facts showing the existence of a history of widespread abuse that put the Warden on notice of the need to correct the alleged deprivation, and he failed to do so. Likewise, Plaintiff fails to identify a policy or custom of Warden Watson or CCA that resulted in the alleged unconstitutional deprivation of medical care and bathroom facilities for Plaintiff.

Finally, Plaintiff's claim that Defendants violated the Thirteenth Amendment prohibition of slavery is frivolous. He provides no basis in law or fact for this claim; therefore, it should be dismissed.

Accordingly, it is **ORDERED**:

Plaintiff's motion to proceed in forma pauperis (Doc. 5) is **GRANTED**.

And it is respectfully **RECOMMENDED**:

1. That Plaintiff's claims against Defendants John Doe, Edward Eanes, Stetsun's Nightclub, Sgt. Garner, Adrien Vela, Kevin Watson, CCA, City of Springfield Police Department, and the State of Florida be **DISMISSED WITH PREJUDICE** for failure to state a claim upon which relief may be granted, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

2. That Plaintiff's Fourth Amendment claims against Defendant Whitehead regarding the lawfulness of the seizure and the amount of force used in transporting Plaintiff to the police car and placing him in it, be **DISMISSED WITH PREJUDICE** for failure to state a claim upon which relief may be granted, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

3. That Plaintiff's Thirteenth Amendment claim against Defendant Whitehead be **DISMISSED WITH PREJUDICE** for failure to state a claim upon which relief may be granted, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

4. That Plaintiff's Thirteenth Amendment claim against Defendant Roberts be **DISMISSED WITH PREJUDICE** for failure to state a claim upon which relief may be granted, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

5. That this matter be referred to the undersigned for further proceedings on Plaintiff's Eighth Amendment claims against Defendants Whitehead and Roberts concerning the alleged deprivation of medical care, Plaintiff's excessive force claim against Defendant Whitehead regarding the force used to effect the seizure of his person upon Whitehead's arrival at the scene, and Plaintiff's Eighth Amendment claim against Defendant Roberts concerning the allegedly unconstitutional conditions of his confinement.

At Pensacola, Florida this 24th day of August 2005.

*/s/ Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**
**Objections to these proposed findings and recommendations may be filed within ten (10) days after being served a copy thereof.  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**